IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VONTE' AVON GAFFNEY         *
                            *
v.                          *    Civil Case No. RDB-12-3168
                            *
F.B. BISHOP, JR., et al.    *
                            *
                            *

*******

## MEMORANDUM OPINION

Vonte' Avon Gaffney ("Petitioner" or "Gaffney") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on October 31, 2012, challenging his convictions in the Circuit Court for Baltimore City. (ECF No. 1). On December 19, 2005, after a three-day trial, a jury convicted Gaffney of attempted first degree murder; first degree assault; reckless endangerment; use of a handgun in the commission of a felony or crime of violence; illegal possession of a firearm; and unlawful wearing, carrying, or transporting of a handgun on his person. Gaffney was sentenced to fifty years in prison.

In his § 2254 petition, Gaffney challenges his conviction on seven separate grounds, all attributed to the alleged ineffective assistance of counsel he received at trial. He alleges trial counsel: (1) failed to admit into evidence a "booking" photo that undermined an eyewitness identification, (2) failed to obtain medical records containing exculpatory information, (3) failed to object to improper jury instructions, (4) failed to attack the credibility of the victim, (5) failed to move for a mistrial after an improper closing argument was made by the prosecutor, (6) failed to raise the issue of improper polling and hearkening of the jury, and (7) when taken together, the cumulative effect of trial counsel's errors establishes constitutionally ineffective representation.

Gaffney initially filed a pro se petition, (ECF No. 1), and the State filed a response, (ECF No. 6). Subsequently, David Warren Lease entered a notice of appearance on Gaffney's behalf, and filed a supplemental petition. (ECF No. 7-8). The State then filed a response to the supplemental petition. (ECF No. 12). The issues pertaining to the petition have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2011). For the reasons set forth below, the Petition for Writ of Habeas Corpus will be denied.

## BACKGROUND

Gaffney was charged in the Circuit Court of Baltimore City with offenses relating to an April, 2005 shooting. The relevant facts developed at trial, as summarized by the Circuit Court for Baltimore City, were as follows:

> On April 27, 2005, at 5:30pm, Marcus Davis was shot four times; two bullets struck him in his head, and two in his torso. Eyewitness Brian Norman testified that Petitioner shot Davis. Norman reported that as Petitioner had approached Davis, the victim stated: "I'm not running from that nigger Vonnie". Norman then heard Petitioner say:
>
> [Norman]: ... "What's up Marcus?"
> [Prosecutor]: Okay. All right. And then what happened?
> [Norman]: He pulled out his gun and he shot him.
> ***
> [Prosecutor]: Do you remember what the person was wearing?
> [Norman]: He had on a gray sweat shirt.
> ***
> [Prosecutor]: Okay. And after he – and when he started shooting, did Marcus actually get hit?
> [Norman]: Yeah.
> [Prosecutor]: Do you know where?
> [Norman]: He got hit in the head twice and the body twice.
> [Prosecutor]: And have you seen Marcus since then?
> [Norman]: Yes.
> [Prosecutor]: And after the person starting shooting, did he say anything else?
> [Norman]: He said anybody snitch, they're going to get it too.
> [Prosecutor]: And do you know who he was saying that to?
> [Norman]: Everybody that was out there.
> [Prosecutor]: Okay. And how many people were out there?

2

[Norman]: There was a bunch of people outside. Everybody was outside. It was broad daylight. It was the middle of the day. It was summer time.

Norman ran from the scene "because I thought he shot me too." Police Officer Karen Brzowsky responded at 6:30pm, investigated and acted on information from witnesses in a nearby house to broadcast the suspect's description[:] the suspect was wearing a red hat, and consequently, his hair length and style were unknown.

After the shooting, on the same day, eyewitness Norman was shown a photo array and, within seconds, he picked out the picture of Petitioner "because that looked like the guy that did it." Norman picked out the picture of "the one with the closest resemblance." Norman explained:

> [Prosecutor]: Okay. And did that person appear exactly the same as in the picture there [in the photo array]?
> [Norman]: No.
> [Prosecutor]: What was different?
> [Norman]: He had cornrows in his hair.
> [Prosecutor]: He had cornrows?
> [Norman]: Yeah.
> [Prosecutor]: Okay. Had you ever seen that person before this incident happened?
> [Norman]: Yeah.
> [Prosecutor]: And where was that?
> [Norman]: It was in that area at the gas station.

At trial, Norman was asked on direct examination by the State: "[D]o you see the person who you saw shoot Marcus in court today?" Norman responded, "yes" and pointed to the Defendant (Petitioner).

Petitioner did not present any trial witnesses, but offered his Central Booking wristband with "the mug shot of Mr. Gaffney when he was arrested". That photo was introduced into evidence. After the jury was advised that evidence was closed, defense counsel apologized for his "Bad mistake" and sought to reopen the defense case for admission of "a photograph of Mr. Gaffney of a prior arrest on April the 7th of last year [2005]". The [T]rial Court rejected the request to reopen the defense case to receive any more evidence.

In closing arguments, the State highlighted the importance of Norman's eyewitness testimony: ". . . And you saw Mr. Norman. You saw him come in here and get on the stand. And you're all astute people. You could tell he wanted to be any place but here. And you know why? Because he was scared." Defense counsel's objection was overruled. The State continued: "But you saw him, you saw him tell you what happened. Okay? You saw him not want to look, but he did. He looked at Vonte' Gaffney and said, "Yes." "This is the person who did

it." Defense counsel objected to a number of later statements – and inferences – offered by the prosecutor in closing argument:

> [Prosecutor]: You've heard what happened, "anybody else snitches, they are going to get it too." You heard testimony that there were other witnesses there, don't know where they are.
> [Defense Counsel]: Objection, Your Honor.
> [Court]: Sustained.
> [Prosecutor]: You heard Brian Norman tell you, "Yeah, Jamal was with me. Haven't seen Jamal in a really long time." Ladies and gentlemen, you saw Brian Norman. You saw how scared he was on the stand. You saw, after he said, "yes that's the person who did it," two people on the back row of the courtroom, get up, grab-pull cell phones out and leave the courtroom.
> [Defense Counsel]: Objection, Your Honor.
> [Court]: Sustained.

Exh. 12 at 5-7 (citations omitted).

Petitioner's counsel did not ask for a curative jury instruction or a mistrial. Exh. 5 at 5. After the foreperson recited guilty verdicts for the attempted first degree murder, first degree assault, and handgun charges, each juror was asked, "You've heard the verdict of your foreman, is your verdict the same?" Exh. 3 at 103-104. Jurors 2 through 11 answered, "Yes." *Id.* Juror 12 responded "Same." *Id.* The clerk then hearkened the verdict by repeating each charge followed by "Guilty." Exh. 3 at 104-05. The clerk concluded, "And so say you all." *Id.* at 105. The transcript does not note how the jury responded. *Id.*

After hearings on March 7 and 24, 2006, Gaffney's motion for a new trial was denied, and he was sentenced to fifty years in prison. *See* Exh. 4-5. Gaffney subsequently filed a direct appeal to the Court of Special Appeals of Maryland. Exh. 6. On April 23, 2008, the Court filed an opinion affirming Gaffney's convictions. Exh. 7. Gaffney did not file a petition for a writ of certiorari, ECF No. 1 at 3, and thus, his judgment became final for direct appeal purposes on June 8, 2008 after the deadline for such an appeal passed.

4

Gaffney initiated state post-conviction proceedings in the Circuit Court of Baltimore on March 30, 2009. Exh. 1 & 9. Gaffney raised the following claims, *inter alia*, in his post-conviction petition and hearing: (A) that trial counsel was ineffective for (1) neglecting to submit into evidence a "booking" photo and the victim's medical records, (2) failing to object to improper jury instructions, (3) failing to impeach the victim with evidence of prior convictions, (4) failing to move for a mistrial after an improper closing argument by the prosecutor, (5) failing to raise the issue of improper polling of the jury, and (6) the cumulative effect of trial counsel's many errors constituted ineffective representation, and (B) his appellate counsel was ineffective for failing to raise the issue of improper jury polling and hearkening. Exh. 9-11. On August 10, 2011, Judge Pamela White denied Gaffney's petition for post-conviction relief in a memorandum opinion. Exh. 12. Gaffney filed a timely application for leave to appeal to the Court of Special Appeals of Maryland, Exh. 13, but that application was denied, Exh. 14.

## THRESHOLD CONSIDERATIONS

### I. Timeliness and Exhaustion of State Remedies

Respondents do not contend, and the Court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, Gaffney no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this Court. His claims are exhausted for the purpose of federal habeas corpus review.

### II. Standard of Review

The amendments to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), require this Court to limit its analysis to the law as it was

5

"clearly established" by precedent at the time of the state court's decision. Section 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). Thus, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (citing *Williams*, 529 U.S. at 407). To be "unreasonable," the state court's application of Supreme Court precedent must have been more than incorrect or erroneous. *See Lockyer*, 538 U.S. at 75. The state court's application must have been "objectively unreasonable." *See Williams*, 529 U.S. at 409; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). That high standard has not been met in Gaffney's case.

## ANALYSIS

### I. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel so defective as to require reversal of a conviction, a petitioner must pass the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must demonstrate that the performance of his counsel was so

deficient as to fall below an objective standard of reasonableness. *Id.* at 687-88. Second, a petitioner must demonstrate that his counsel's defective performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* at 687. The Supreme Court has made it clear that courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered a sound trial strategy.'" *Id.* at 689.

In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Gaffney asserts the he received ineffective assistance of counsel in seven respects. Each issue he raises is addressed sequentially below.

*A. April 7, 2005 "Booking" Photograph*

Gaffney argues that his trial attorney's failure to introduce a "booking" photograph of him taken twenty days before the shooting incident was extremely prejudicial to his case. ECF No. 7 at 6-16. The single eyewitness, Brian Norman, testified repeatedly that the shooter had cornrows in his hair. Exh. 2 at 31-32, 39, 51. Gaffney alleges that the April 7, 2005 photograph constituted the crux of his whole defense because it showed that his hair was too short to be braided weeks afterward, and thus, would have substantially weakened Norman's testimony. ECF No. 7 at 6-16. However, it is not clear that the photograph embodies the pivotal importance that Gaffney assigns to it. Norman's testimony regarding the shooter's hairstyle and lack of headwear, Exh. 2 at 39, was contradicted by other evidence at trial. Officer Karen Brzowsky

7

testified that the broadcast description of the suspect specified that he was wearing a red baseball hat, and that her report stated the shooter's hairstyle was "unknown" based on statements made by other witnesses at the scene. Exh. 3 at 12-13. The defense counsel emphasized the discrepancies between Norman's testimony and other eyewitness statements in his closing argument. Exh. 3 at 58-59, 61-62. Even without the April 7, 2005 photograph, Gaffney's attorney was able to reasonably challenge Norman's identification of Gaffney. Thus, Gaffney has not demonstrated that his trial counsel's oversight regarding the photograph either constitutes an objectively unreasonable error in performance or prejudiced his defense. Because he must show both to satisfy the *Strickland* test, his argument falls short. *See DeRosa v. Workman*, 679 F.3d 1196, 1218 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 1645, 185 L. Ed. 2d 626 (U.S. 2013) (finding counsel's failure to present largely duplicative mitigating evidence during sentencing hearing did not constitute ineffective representation); *see also Peterson v. Smith*, 510 F. App'x 356, 362 (6th Cir. 2013) (finding impeachment of eyewitness with minor inconsistencies and immaterial discrepancies would not have sufficiently undermined eyewitness's credibility to raise reasonable probability that result would have been different).

*B. Victim's Medical Records*

Next, Gaffney alleges that his trial counsel failed to perform an adequate investigation and gather exculpatory evidence showing the victim had alcohol on his breath. ECF No. 7 at 17-19. He argues that without those records, he was unable to confront Norman with evidence undermining his ability to perceive the events of the night in question. *Id.* at 18-19. The state post-conviction court found this argument unconvincing because the evidence in the case warranted no instruction that the murder attempt was justified or that Gaffney's conduct was mitigated by the victim's actions. Exh. 12 at 11. The court further observed that trial counsel

was free to inquire about the strength of the eyewitness's perception with or without the medical records; that trial counsel did, in fact, conduct an appropriate cross examination; and that his alleged failure to obtain the medical records was not a deficient act. *Id.* at 11-12. This Court agrees. Evidence indicating the victim was drinking is of questionable value in attacking another eyewitness's ability to perceive the scene.

Moreover, trial counsel knew of the records before the trial, but did not request a postponement so that he could obtain the records. Exh. 4 at 101-02. It is reasonable trial strategy to forego attacking a victim's credibility where the victim has suffered a grievous injury and is not testifying. *See Leonard v. Lafler*, 517 F. App'x 459, 464-65 (6th Cir. 2013) (holding that counsel's failure to investigate assault victim's medical records was reasonable strategy where the records were immaterial to defense presented at trial). Again, this argument falls far short of the *Strickland* test.

## C. Jury Instructions

Gaffney next avers that his trial counsel's failure to challenge a deviation in the given jury instructions from the Maryland Pattern Jury Instruction was objectively unreasonable. ECF No. 7 at 19-22. However, this Court's review of the state post-conviction court's analysis of state law is extremely limited. "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). A federal court may grant relief only where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates" the Constitution. *Id.* at 72. The single claim of error is that the jury instruction omitted the sentence, "Second degree murder does not require premeditation or deliberation." ECF No. 7 at 20. While that sentence would have provided additional clarity to help the jury discern between first and second degree attempted murder, it

was not necessary. *See* Exh. 3 at 38 (instructing the jury that in order for them to find the defendant guilty of first degree attempted murder, the State must prove "that the defendant willfully and with premeditation and deliberation intended to kill Marcus Davis"). Gaffney has not even demonstrated that this error was material, and has certainly not shown that it led to a constitutionally unjust outcome.

## D. *Victim's Prior Convictions*

Gaffney's fourth argument is that trial counsel was ineffective for neglecting to impeach the victim's credibility. ECF No. 7 at 22-23. The court admitted into evidence the victim's statement, "I'm not running from that nigger, Vonnie." Exh. 2 at 8-9. As the state post-conviction court detailed, under the circumstances, attempting to impeach the victim's credibility as to that single statement with his prior convictions would have been a dubious strategy at best. Exh. 12 at 15-16. In addition, the victim's convictions for theft and telephone harassment would have been of limited relevance as to his credibility on a spontaneous identification statement five years later. I find that the state court was entirely reasonable in finding no deficiency in the trial attorney's performance in respect to the introduction of the victim's prior convictions.

## E. *Motion for Mistrial*

Gaffney's fifth sub-argument is that his trial attorney rendered ineffective representation in failing to move for a mistrial based on the prosecutor's closing argument. ECF No. 23-27. During closing, the prosecutor made an improper comment inferring that Gaffney, through associates in the courtroom, intimidated the lone witness. Exh. 3 at 77. Gaffney's defense counsel immediately objected, and the court sustained his objection. *Id.* Gaffney's attorney did not ask for a curative jury instruction, and did not move for a mistrial until after the jury returned its guilty verdict, but it is far from clear that if he had a different outcome would have resulted.

*See Hill v. State*, 734 A.2d 199, 209 (Md. 1999) (holding that reversal is only mandated where a prosecutor's remarks actually mislead or were likely to mislead or influence the jury to the defendant's prejudice); *Kosh v. State*, 854 A.2d 1259, 1264 (Md. 2004) ("The determining factor as to whether a mistrial is necessary is whether 'the prejudice to the defendant was so substantial that he was deprived of a fair trial.'" (quoting *Kosmas v. State*, 560 A.2d 1137, 1141 (Md. 1989))). Furthermore, Gaffney's attorney conceded that the decision to forego a motion for a mistrial during the trial based on the prosecutor's comment was a strategic decision. Exh. 4 at 76-77. In addition, the jury was properly instructed that the attorneys' closing arguments were not evidence in the case. Exh. 3 at 34. Again, the state court's decision to find Gaffney's trial counsel's conduct reasonable in the context of his trial is in no way objectively unreasonable.

### F. *Polling and Hearkening of the Jury*

Gaffney's sixth sub-argument is that his trial and appellate counsel were ineffective in failing to raise the issue of improper polling and hearkening of the jury. ECF No. 7 at 27-32. He relies on a number of Maryland cases in arguing that the jury's responses to polling and hearkening did not meet the precise specifications of Maryland state law. As discussed above, a federal court's review of a state court's analysis of state law focuses only on determining whether the conviction violated the Constitution or U.S. law. *See McGuire*, 502 U.S. at 67-68. The alleged technical transgressions in polling and hearkening the jury do not merit federal habeas corpus relief. *See also United States v. Carter*, 772 F.2d 66, 67 (4th Cir. 1985) (finding "no authority which holds that the right to a poll is of constitutional dimension" and further endorsing as best practice a poll that asks each jury to "respond individually whether he agrees with the verdict as announced").

*G. Cumulative Effect of Attorney Errors*

Gaffney's final argument is that the cumulative effect of his trial counsel's numerous errors constitutes ineffective representation. ECF No. 7 at 32-34. The Fourth Circuit, along with a majority of circuits, does not recognize the cumulative effect doctrine where none of the alleged errors of trial counsel amount to constitutional error. *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998). Because I have reviewed each alleged error on its merits and found that none rise to the level of deficient performance required by *Strickland*, the cumulative effect doctrine is inapplicable.

## CONCLUSION

For the foregoing reasons, Gaffney's Petition for Writ of Habeas Corpus is DENIED. A separate order follows.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

Dated: November 20, 2013

Richard D. Bennett
United States District Judge